SECOND NATIONAL BANK OF NEW HAMPTON, Appellant, v. JOHN
SCANLON et al., Appellees.

**BILLS AND NOTES:** Holdership in Due Course—Jury Question. Proof
that a negotiable promissory note was obtained from the maker by
fraud does not *necessarily* and in all cases present a jury question
on the issue whether the transferee is a holder in due course. Evi-
dence reviewed, and held to present a jury question.

*Appeal from Shelby District Court.*—O. D. WHEELER, Judge.

DECEMBER 14, 1923.

SUIT on a promissory note given by the defendants to the
Missouri Valley Cattle Loan Company, which note was trans-
ferred to the plaintiff. The case was submitted to the jury,
which returned a verdict in behalf of the defendants. The plain-
tiff appeals.—*Affirmed.*

*George Wright* and *Stout, Rose, Wells & Martin,* for ap-
pellant.

*Shelby Cullison,* for appellees.

FAVILLE, J.—On August 15, 1919, appellees executed and
delivered to the Missouri Valley Cattle Loan Company, a
Nebraska corporation, their certain promissory note for $5,000,
payable in one year, and bearing interest at eight per cent. The
note was given in consideration for certain shares of capital
stock of the said loan company. The record shows that the said
note was obtained from the makers by false and fraudulent rep-
resentations. Appellant contended that it was a bona-fide pur-
chaser of the note in due course, and offered proof to sustain
this contention. The cause was submitted to the jury, and a ver-
dict was returned in behalf of appellees.

The sole question for our determination is whether, under
the record in this case, appellant's motion for a directed verdict
in its behalf should have been sustained by the trial court. The

appellees having offered testimony of the false and fraudulent representations that induced the execution of the note, the burden rested upon appellant to establish that it was a holder in due course. Code Supplement, 1913, Section 3060-a59; *State Bank of Chicago v. Oyloe Piano Co.,* 195 Iowa 1152; *Anderson Sav. Bank v. Hopkins,* 195 Iowa 655.

Appellees contend that, in every case where there is proof that the note was procured by fraud, a question is presented for the determination of a jury as to whether or not the payee is a holder in due course, and that in no such instance is a court justified in directing a verdict for the holder on this question. The argument is to the effect that the question of the credibility of the witnesses in behalf of the holder is one for the jury, and that, even if there be direct and positive evidence that the payee is a holder in due course, a question arises for the jury to determine the credibility of the witnesses, and that the question does not become, in any instance, one of law for the court.

This contention of appellees' is too broad and sweeping, and is not in line with the previous holdings of this court. The evidence that the transféree of a negotiable instrument is a holder in due course may be so indubitable as to make it the duty of the trial court to direct a verdict in behalf of the holder of such instrument, even though it be established that the instrument was induced by fraud on the part of the original payee. *Central State Bank v. Spurlin,* 111 Iowa 187; *Johnson v. Buffalo Center St. Bank,* 134 Iowa 731; *Arnd v. Aylesworth,* 136 Iowa 297; *Robertson v. U. S. Live Stock Co.,* 164 Iowa 230; *City Nat. Bank of Auburn v. Mason,* 192 Iowa 1048; *Grinnell Sav. Bank v. Gordon,* 195 Iowa 208.

It is also true that, although the payee may offer testimony direct and positive to the effect that he is a holder in due course, still the facts and circumstances surrounding the transaction may be such as to leave the question as to whether or not the payee is a holder in due course, one for the determination of the jury. *Connelly v. Greenfield Sav. Bank,* 192 Iowa 876; *German Am. Nat. Bank v. Kelley,* 183 Iowa 269; *Anthon St. Bank v. Bernard,* 194 Iowa 1090; *Mooers v. Stalker,* 194 Iowa 1354; *Farmers Nat. Bank v. Pratt,* 193 Iowa 406; *McLaughlin-Gorm-*

*ley-King Co. v. Hauser,* 195 Iowa 224; *Commercial Sav. Bank v. Colthurst,* 195 Iowa 1032.

In the case at bar, it appears that the original payee of the note, the Missouri Valley Cattle Loan Company, was the successor of the McNish Cattle Loan Company, and that both of said companies were under the management of one McGrew. The makers of the note in suit are farmers, residing near Irwin, in Shelby County. The record shows that the president of appellant bank had, at various times for some ten years prior to the purchase of the note in suit, bought commercial paper of one Huttig, a note broker, at Muscatine, Iowa. On June 7, 1919, McGrew had written appellant, announcing the change in the corporation from the McNish Cattle Loan Company to the Missouri Valley Cattle Loan Company. Appellant had purchased, at various times, commercial paper from the McNish company, and after the change in the corporation, purchased a considerable amount of notes given to the Missouri Valley Cattle Loan Company.

In regard to the particular transaction in question, it appears that, sometime prior to September 15, 1919, the broker, Huttig, had written to appellant, offering to sell to said bank certain notes described in said letter, including the note of appellees. On September 16th, Huttig again wrote appellant, and inclosed two letters which he had previously addressed to two banks in the town of Irwin, where appellees lived. Each of said banks made statements on said letters regarding the financial standing of appellees, and returned said letters with such indorsements to Huttig, who forwarded them to appellant. On September 15th, appellant wrote Huttig, stating that it had selected certain notes submitted by Huttig, including the note in suit, with others. This letter referred to letters from Huttig of the 12th and 13th of September.

On September 17th, the loan company wrote directly to the bank, saying that, on instruction from Huttig, they were sending the bank certain notes, aggregating, with interest, $10,858.21, and advised appellant that it was drawing on appellant for the face of said note, plus the accrued interest, and less the sum of $750. The loan company drew on appellant on September 18th for said amount, and the bank made remittance on September

24th, by drawing its draft for the amount of the face of said notes and interest, less $750.

It also appears that, at said time, Huttig was indebted to appellant on a note which was not yet due, and $750 of the proceeds of the notes sold to appellant was indorsed on this note of Huttig's, under direction from him.

On September 19th, appellant wrote to appellees at Irwin, stating that it had purchased their note, and inquiring of appellees if they had signed the same, and if it was all right. A stamped return envelope was inclosed with this letter, which letter was received by appellees in due course of mail, and to which they made no reply.

The sole question is whether or not, notwithstanding the testimony of the president of appellant bank that it purchased the note in due course, there were sufficient circumstances shown in the evidence that properly took the case to the jury, or whether, under the record, the court should have directed a verdict in behalf of appellant.

The letter of appellant to Huttig, dated September 15th, shows on its face that it referred to two previous letters from Huttig of the 12th and 13th, respecting the note in suit, together with other notes. These letters were not produced by appellant upon the trial, although request was made for the same. The failure to produce these letters, which obviously referred to the sale of the note in suit, was a circumstance proper to be considered by the jury. The burden resting upon appellant to establish that it was a purchaser of the note in due course required the disclosure of the information within its possession, upon which it acted in connection with the purchase of the note in suit. The letters called for should have been produced, or a reason given for the failure to do so, or proper foundation laid and their contents proved.

Furthermore, in the letter of September 15th, in which appellant proposed to purchase the note in suit, is the statement: "If anything shows up bad on these, we will expect to return the same to you." The jury had a right to consider this circumstance in connection with others, in passing upon the question as to whether appellant was a purchaser in due course.

Again, on September 19th, appellant wrote a letter to ap-

pellees, stating: "We have *this day* purchased a $5,000 note of yours from the Missouri Valley Cattle Loan Company." The letter also said: "We wish you would advise us if this note was signed by you, and whether it is all right." A stamped envelope was inclosed for a reply. No reply whatever was received to this letter, nor was the statement therein correct that appellant had purchased said note on that date; for it affirmatively appears that the note was not purchased or paid for by appellant until September 24th, and that, at the time of writing said letter, the note was not in the possession of appellant. Notwithstanding that no reply was received from appellees to this letter, appellant remitted for the note on the 24th of September.

Upon the trial of the case, the president of the bank, who conducted the negotiations for the purchase of the note, was a witness in behalf of appellant. He testified regarding the credit of $750 to Huttig:

"He got a commission. He got so much money. I didn't know if it was a commission or what it was. I didn't know there was anything that showed me there was a commission. He told us to deduct $750 and give him credit for it. Of course, I might have had my suspicion he was getting a commission. I didn't think what it was. I supposed he was getting a commission, but I didn't suppose this amount. If he received all this for selling this bunch of notes, it was a large commission. I didn't know whether it was a commission."

We have set out enough of the evidence to indicate that there was sufficient in the record to carry to the jury the question as to whether or not appellant was a holder in due course. It must be conceded that the evidence is very meager, and by no means satisfactory or conclusive, and that a jury might well have been warranted, upon the record, in finding that appellant was a holder in due course. We cannot substitute our own conclusions on a fact question for those of a jury, however, where there is sufficient evidence in the record to carry the case to the jury and to sustain a verdict returned thereon. We think that, under our previous holdings, and upon the record in this case, the trial court did not err in submitting the questions of fact to the jury for its determination as to whether or not appellant was a holder in due course. The case does not come within the

class where the trial court would have been warranted in directing a verdict in favor of appellant because of a failure of any sufficient facts or circumstances to carry to the jury the question as to whether or not the purchaser was a holder in due course.

We find no error in the record requiring interference on our part, and the judgment appealed from must, therefore, be —*Affirmed*.

PRESTON, C. J., EVANS and ARTHUR, JJ., concur.