State Savings Bank of Missouri Valley, Appellant, v. Fred C. Behm et al., Appellees.

BILLS AND NOTES: Holdership in Due Course—Jury Question. Evidence fairly tending to negative holdership in due course of a negotiable *promissory note* presents a jury question, especially when not all of the officers of the plaintiff (a bank) testify, and negative knowledge of the pleaded fraud. (See Book of Anno., Vol. 1, Sec. 9519, Anno. 4 *et seq.*)

BILLS AND NOTES: Holdership in Due Course—Value in Form of "Credits"—Improper Submission. Where the purchaser of a negotiable promissory note paid for the same by giving the payee a credit on others of payee's notes then held by the purchaser, the question of the *value* of said credit should not be submitted to the jury when the uncontradicted testimony shows that the payee was *solvent*; and this is true even though the jury finds (contrary to the evidence)

(1) that the credit had no value, and (2) that the purchaser was not a holder in due course.

**BILLS AND NOTES:** Holdership in Due Course—Fraud—Estoppel. The maker of a negotiable promissory note may not be said to be estopped to plead fraud in the inception of the note, against a transferee, on a record which fails to show that the maker's conduct ever came to the knowledge of the transferee or in any manner controlled *his* conduct. (See Book of Anno., Vol. 1, Sec. 9518, Anno. 3-a1 *et seq.*)

Headnote 1:   8 C. J. p. 1061.   Headnote 2: · 8 C. J. p. 1064 (Anno.)
Headnote 3:   8 C. J. p. 723; 21 C. J. p. 1205.

*Appeal from Harrison District Court.*—E. B. WOODRUFF, Judge.

JUNE 21, 1926.

Action on a promissory note given by defendant Behm to defendant Coulthard for $1,500, dated October 20, 1920, and indorsed before maturity to plaintiff. The court directed a verdict in favor of Coulthard, for want of notice of dishonor, and he is out of the case.

Coulthard was a purchaser of stock in the Farmers Mortgage Company. The note in question was given for the purchase price of a part of this stock, agreed to be resold by Coulthard to Behm. Behm alleges fraud in the making of this sale, and also alleges want of consideration. Coulthard sold the note to plaintiff, and plaintiff claims to be a holder in due course. Before plaintiff purchased defendant's note, it held the notes of Coulthard for a much larger amount. About the time of the maturity of these notes, Coulthard indorsed the note in question to the plaintiff, received credit for it upon his notes, paid plaintiff some cash, gave a new note for the balance, and received his old notes. McEvoy was plaintiff's cashier, one of its managing officers, and the one with whom the transaction just referred to was conducted. Whether any other of the officers of the plaintiff had any part in the transaction, or what they knew about it, does not appear. They did not testify. McEvoy testified that, at the time plaintiff purchased the note, he "had no knowledge as to what the note was given for." He says he did not have any talk with Coulthard "prior to the purchase of this note with

reference to any transaction.'' Coulthard says that at that time nothing was said by him to McEvoy as to what the note was given for. McEvoy was previously a purchaser of stock in the Farmers Mortgage Company,—as he says, ''Just a sucker.'' There is evidence tending to show that McEvoy had, before the sale by Coulthard to Behm, given a letter to one of the salesmen of the Farmers Mortgage Company, in which McEvoy stated that he had investigated the company, found it to be what he thought a good proposition,—a good. business,—and recommended it to investors. Before plaintiff took defendant's note, it knew Coulthard's financial condition,—knew that he had purchased stock of the mortgage company and was owing to that company $25,000. The fraud charged relates to the financial condition of the mortgage company. It never paid any dividends. The case was submitted to the jury on the question of fraud, want of consideration, whether plaintiff was a holder in due course, and the value, if any, of the credit given by plaintiff to Coulthard on his notes. The jury returned a verdict for defendant, on which judgment was rendered, and plaintiff appeals. —*Reversed.*

*R. J. Organ,* for appellant.

*Robertson & Havens, Bolter & Murray,* and *William P. Welch,* for appellees.

· MORLING, J.—I. At the close of the evidence, plaintiff moved for a directed verdict, upon the ground, among others, that the evidence without dispute showed that plaintiff was a holder in due course. The record does not show any exception to the overruling of this motion. In view of a new trial, we may add that we are of the opinion that the motion was properly overruled. *Cedar Point St. Bank v. Youtz,* 200 Iowa 86; *Second Nat. Bank v. Scanlon,* 196 Iowa 1305; *Central St. Bank v. Peoples Sav. Bank,* 196 Iowa 43; *Hess v. Iowa Bankers Mtg. Co.,* 198 Iowa 1365; *McNight v. Parsons,* 136 Iowa 390. The case as presented here is not within *First Nat. Bank v. Dutton,* 199 Iowa 468; *Feder v. Elliott,* 198 Iowa 447; *Arnd v. Jones,* 197 Iowa 244; *First Nat. Bank v. Brown,* 197 Iowa 1376.

1. BILLS AND NOTES: holdership in due course: jury question.

II. The court charged the jury, in substance, that plaintiff, if entitled to recover, could recover only the value of the credit which it gave to Coulthard; that it was for the plaintiff to show

2. BILLS AND NOTES: holdership in due course: value in form of "credits:" improper submission.

the value of the Coulthard notes, or so much thereof as Coulthard was given credit for by the note in suit; and that, if the Coulthard notes were of no value, plaintiff had given nothing for defendant's note, and was not entitled to recover; that, if the jury found that defendant's note was obtained by fraud, but that plaintiff was entitled to recover, then the jury must determine the value given by plaintiff for defendant's note, and return a verdict for that amount, with interest. These instructions were properly excepted to. The jury answered, "No," to the following special interrogatory:

"Do you find from the evidence herein that the plaintiff, State Savings Bank, was an innocent purchaser of the note sued on?"

The jury answered, "Nothing," to the following special interrogatory:

"How much, if any, do you find from the evidence herein was the value of the credit that the plaintiff * * * gave D. L. Coulthard on his notes referred to?"

In the instructions, the terms "innocent purchaser" and "holder in due course" appear to have been used interchangeably. We therefore cannot hold that the answer to the first special interrogatory referred to shows that the error in the instructions referred to was without prejudice in connection with the instructions. We think that these instructions were erroneous. The evidence showed that Coulthard, at the time that he sold defendant's note to plaintiff, was entirely solvent. There was no evidence to the contrary, or evidence that Coulthard had become insolvent. His notes were *prima facie* worth the amount payable by their terms. *Callanan v. Brown & Co.,* 31 Iowa 333; *Sickles v. Dallas Center Bank,* 81 Iowa 408; *Dean v. Nichols & Shepard Co.,* 95 Iowa 89; *Pelley v. Walker,* 79 Iowa 142; *Freeman v. Strohbehn,* 122 Iowa 157; *Hubbard v. State Life Ins. Co.,* 129 Iowa 13. On the record presented here, it must be held that the plaintiff paid full value for defendant's note, and the question of the value of Coulthard's

notes should not have been submitted to the jury. The jury, having found that the plaintiff did not pay value, necessarily found that plaintiff was not a holder in due course, and its finding that plaintiff was not an innocent purchaser may have been founded upon the supposed absence of consideration for plaintiff's purchase. Under the Negotiable Instrument Law, an antecedent or pre-existing debt constitutes value. Code of 1924, Section 9485 (1913 Supplement, Section 3060-a25). Section 3070, Code of 1897, does not affect the case as it stands here.

Plaintiff contends that defendant is estopped from asserting fraud. Defendant testifies that Coulthard was to hold "the notes in trust until such time as I could talk the proposition over, and fully decide that we wanted them turned over to the company. Three or four days after that * * * I told Mr. Coulthard to go ahead and turn the notes over. * * * At that time, Mr. Coulthard told me again that he had been to Council Bluffs and looked over the company's books, and that they were in first-class condition, and that he had been elected a director * * * and that he and his father had invested $90,000 in the stock, and that the company would be all they expected of it."

3. BILLS AND NOTES: holder-ship in due course: fraud: estoppel.

Defendant did not make any investigation. There is no evidence that he then had any knowledge of the fraud; none that he knew that the note was to be negotiated to the plaintiff, or that the plaintiff knew or acted upon any representation by the defendant. The elements of an estoppel are lacking. *Hill v. Dillon*, 151 Mo. App. 86 (131 S. W. 728); *Adams v. Ashman*, 203 Pa. St. 536 (53 Atl. 375); 21 Corpus Juris 1205.

The judgment is—*Reversed.*

DE GRAFF, C. J., and EVANS and ALBERT, JJ., concur.