THE WINFIELD MORTGAGE & TRUST COMPANY, *Appellee*, v. W. C. ROBINSON, *Appellant*.

No. 18,238.

SYLLABUS BY THE COURT.

1. CORPORATION—*Compensation for Services of President—Ordinary Duties.* A president of a corporation is not entitled to compensation for performing the ordinary duties of his office in the absence of a previous agreement or authorization by the board of directors.

2. —————— *Employing Counsel—Directing Litigation.* The employment of counsel in behalf of the corporation and the directing of litigation in which it is interested is one of the ordinary duties and powers of a president of a corporation.

3. MONEY RECEIVED—*By President—Action to Recover—When Interest Not Allowed.* Where a president of a corporation institutes and carries on litigation in its behalf in which money is recovered and there arises a *bona fide* dispute between him and the corporation as to what expenses of the litigation shall be paid out of the fund, and also whether he is entitled to retain compensation for his services in connection with the litigation, and an action is brought against him to recover the money withheld in which some of his claims are upheld and others disallowed, and there is no vexatious or unreasonable delay in the payment of the money, he is not liable for interest on the money so withheld.

Appeal from Cowley district court. Opinion filed June 7, 1913. Modified.

*W. P. Hackney,* and *J. T. Lafferty,* both of Winfield, for the appellant.

*G. H. Buckman,* and *S. C. Bloss,* both of Winfield, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover from the appellant, W. C. Robinson, moneys alleged to belong to the appellee, the Winfield Mortgage & Trust Company, the payment of which he had refused to make on demand. For a number of years the com-

pany successfully carried on the business of loaning
money and selling mortgages, and in furtherance of
the business issued and floated $70,000 of its debenture
bonds, and as security for their payment deposited with
a trustee in New York an equal amount in mortgages.
In 1894 the company became insolvent, and F. K. Rob-
inson, a nephew of appellant, was appointed as receiver
of the company.  Appellant had been acting as presi-
dent of the company before the receiver was appointed
and continued to act in that capacity throughout the
receivership.  During the receivership no stockholders'
or directors' meetings were held, but on January 5,
1909, an election was held and new officers were elected
to take control of the company's business.  When F. K.
Robinson filed his report as receiver its correctness
was challenged by appellant, who was then president
of the company, and counsel were employed by him to
take exception to the report and to conduct an investi-
gation of the receiver's administration.  Many mo-
tions were made and hearings had in this connection,
and at the end it was found that there was in the re-
ceiver's hands, belonging to the company, a much
larger sum than had been reported, and he was ordered
by the court to pay into the court $9969, which was
done.  The appellant, as president of the company, had
employed two firms of lawyers to protect the interests
of the company in the controversy with the receiver,
and out of the money paid in by the receiver on the
order of the court $1500 was paid as a fee to one of
the firms and $3000 to the other.  After paying all
allowances and expenses there remained in appellant's
hands, as was alleged, $5469 which had been paid over
to appellant by the clerk of the court.  Afterwards,
when the new officers of the company had been elected
and installed, a demand of this sum was made upon
appellant, but it was refused, and thereupon the pres-
ent action was brought.  The appellant alleged in an an-
swer that he was entitled to a credit of $3500 for serv-

ices rendered by him in and about the litigation against
the receiver. He also claimed a credit for an additional
attorneys' fee and some other expenses that had been
incurred. The trial court, on a demurrer to a count
of the answer, held that the services rendered by ap-
pellant came within the scope of his duties as president
of the company, and that no provision having been
made to pay him for such services no recovery could be
had. On a trial before a jury a verdict was returned in
favor of the company for $5480.12, and the special
findings returned show that appellant was allowed $500
for an additional fee paid to attorneys in Kansas and
$125 paid an attorney for services in a proceeding in
New York for an accounting with the trustee. Another
finding disclosed that $822.12 was allowed by the jury
as interest on the amount found to be due from and
withheld by appellant.

The first question arising on the record is as to the
right of appellant to compensation for services ren-
dered in and about the controversy with the receiver.
Appellant employed counsel to conduct the litigation,
consulted with them as to the course to be pursued,
examined pleadings, reports and papers filed in the
case, and attended a great many hearings upon motions
and applications that were presented to the court. It
is well settled that an officer of a corporation is not
entitled to compensation for services rendered by him
in an official capacity or as incidental to the office unless
such compensation has been agreed upon or its pay-
ment authorized in advance by the board of directors.
No agreement was made with the appellant that com-
pensation for his services in this respect should be
made, nor was payment authorized by the governing
authority of the company, either before or after the
rendering of the services. In *National Bank v. Drake*,
29 Kan. 311, 44 Am. Rep. 646, this rule was announced
by the court, and then it went farther and held that it
was not within the power of the directors to pay for

such services after they had been performed unless there was a previous agreement between the company and the officers that compensation should be made. See, also, the cases therein cited. In the opinion the case of *Loan Association v. Stonemetz,* 29 Pa. St. 534, was cited, in which it was said:

"We regard it as contrary to all sound policy to allow the director of a corporation elected to serve without compensation, to recover payment for services performed by him in that capacity, or as incidental to his office. It would be a sad spectacle to see the managers of any corporation, ecclesiastical or lay, civil or eleemosynary, assembling together and parcelling out among themselves the obligations or other property of the corporation in payment for their past services." (p. 536.)

In reference to the rule that officers are not entitled to compensation for performing the usual and ordinary duties incidental to the office without agreement or provision having been made by corporate action, it is said in 3 Clark and Marshall on Private Corporations, § 671:

"They can not recover on implied contract for what the services were reasonably worth, for the law will not imply a promise on the part of the corporation to pay; and it can make no difference, in the application of this rule, that the services were performed with the expectation of compensation, or with the general understanding among the directors themselves that they should receive compensation. And no compensation can be recovered from the corporation by one employed by a director to do what the director should have done, as such, without compensation.

"The courts have based this doctrine on the ground that the directors, president, and other managing officers of a corporation are in effect trustees, and the law does not imply any promise to pay trustees for performing their duties as such, or allow them to take compensation out of the funds in their hands, in the absence of an express provision or agreement for compensation."

The supreme court of Illinois went to the extent of holding that where services had been performed without any authority or provision by corporate action that the officer could not thereafter be paid by the corporation for such services, saying that:

"Where a president of an incorporated company performs services as such, without any by-laws or resolution providing compensation for his services, and afterwards accepts a salary voted to him for past services, he will be liable to refund the same in favor of creditors of the company." (*Ellis et al. v. Ward et al.*, 137 Ill. 509, syl. ¶ 2, 25 N. E. 530.)

In 2 Cook on Corporations, 6th ed., § 657, it is said:

"A frequent fraud upon corporations and stockholders is perpetrated by the corporate funds being used to pay illegal salaries and compensation to corporate officers and assistants. It is a general rule that a director is not entitled to any pay for his services to the corporation, *as a director,* where there has been no agreement in advance that he shall have such pay."

Judge Thompson, in his work on Corporations, states the rule to be:

"The general rule is that directors and trustees of corporations presumptively serve without compensation, and that they are entitled to no salary or other compensation for performing the usual and ordinary duties pertaining to the office of director or trustee, in the absence of some express provision or agreement to that effect. The law does not assume to prohibit corporations from compensating them for their services, but, owing to the peculiar relation they bear to the corporation, on the one hand, and to the stockholders on the other, the courts have universally held that they can not recover compensation for any services incidental to their office of director; and the application of the rule is not changed or affected by the fact that the services are performed with the expectation of receiving pay, or with the general understanding among the directors themselves that they shall be compensated." (2 Thompson on Corporations, 2d ed., § 1715; see, also, § 1728.)

Trust Co. v. Robinson.

Among other authorities may be cited: *Martindale v. Wilson-Cass Co.*, 134 Pa. St. 348, 19 Atl. 680, 19 Am. St. Rep. 706; *Home Mixture Guano Co. v. Tillman*, 125 Ga. 172, 53 S. E. 1019; *Williams v. Little Falls Water Power Co.*, 99 Minn. 4, 108 N. W. 289; *Porch v. Agnew Co.*, 70 N. J. Eq. 328, 61 Atl. 721; *Lowe v. Ring*, 123 Wis. 370, 101 N. W. 698, 3 A. & E. Ann. Cas. 731, and note; 1 Morawetz on Private Corporations, § 508; 10 Cyc. 921; 21 A. & E. Encycl. of L. 905.

The services for which compensation was asked were those which pertained to the office of president. In the absence of a contrary corporate provision the president is empowered to employ counsel and to manage the litigation in which the corporation is interested. This is said to be one of the inherent powers of a president of a corporation, and it has also been held that if the board of directors should employ counsel it would not deprive the president of the power to employ other counsel and control the litigation. (*National Bank v. Berry*, 53 Kan. 696, 37 Pac. 131, 24 L. R. A. 719; 1 Morse on Banks and Banking, 4th ed., § 143; Note, 14 L. R. A. 360.)

The investigation instituted and managed by appellant resulted in the recovery of a considerable sum of money, but nevertheless it did not entitle him to compensation since the services were clearly within the scope of his official duty. 'Most of the items in his account were for actions directly connected with the preparation and presentation of the claims of the company against the receiver, and for services of that character attorneys' fees were allowed.

Another credit was claimed for $500 paid as attorney's fees to a lawyer in New York for services in a proceeding for an accounting by the trustee of the debenture bondholders. F. K. Robinson had been substituted as trustee for the Farmers Loan & Trust Company originally appointed. In the trustee proceeding those holding debenture bonds or who were otherwise

interested were made parties. An attorney was employed to represent the company, the First National Bank of Winfield, Kansas, the Bristol Savings Bank of Bristol, N. H., and the appellant, and for his services in behalf of these parties a fee of $500 was paid. In the trial in this proceeding the jury found that appellant was entitled to a credit of $125 for the services of this attorney in behalf of the company. According to the opinion evidence the value of the services of this attorney in the trustee proceeding for all of his clients was $500. As we have seen, he represented three others besides the company, and the jury decided that one-fourth of the amount was fairly chargeable against the company. What the services were worth to the company was a question of fact for the determination of the jury. The trial court, which had the pleadings, reports and orders in that proceeding before it, approved the finding, and it can not be held that it is without support.

The remaining question is whether the appellant is properly chargeable with interest on the money which came into his hands as a result of the litigation with the receiver. The court instructed the jury that interest should be allowed on any balance of the funds in his hands after giving him the credits to which he was entitled. The jury awarded appellee interest to the amount of $822.12. As has been seen, the moneys came into his hands by virtue of his office and the direction and control of the litigation with the receiver. To enforce the restoration of the company's funds expenditures had necessarily been made and services had been rendered by him in his capacity of president. The credits he claimed when a settlement was attempted were disputed by the new management. Some of them were finally upheld as proper credits and others were rejected. There was a *bona fide* controversy as to the amount to which he was entitled out of the trust funds which came into his hands, and the

Trust Co. v. Robinson.

claims of each party to the controversy were in part sustained. If the claims had been made in bad faith or if there had been an unreasonable and vexatious delay of payment there would be some reason to demand the payment of interest. (Gen. Stat. 1909, § 4344.) The money recovered in the litigation was rightfully paid to him and it was not unreasonable that he should hold it until the questions in dispute were settled. It was his duty to pay all expenses of the litigation out of it and return the balance to the company. We find nothing to show that the claim for compensation for services was not made in good faith. The withholding of the money pending settlement is somewhat like the case of money held by an executor or trustee until disputed questions as to the payment of the money are determined, and generally such officers are not liable for interest on the money withheld. (*Stevens v. Ottawa Probate Judge*, 156 Mich. 526, 121 N. W. 477.) A case quite similar to this one was decided by the supreme court of Illinois, wherein it was held that a president of a corporation was not chargeable with interest. After holding that the president was not entitled to compensation for official services unless provision was made for it by the corporate authorities, it was held:

. "Where the president of a corporation retained from corporate funds amounts to which he thought himself entitled as compensation, but which it was found he could not be allowed in the absence of any by-law authorizing such compensation, and there was no vexatious or unreasonable delay, he was not liable for interest." (*Chicago Macaroni Co. v. Boggiano*, 202 Ill. 312, 67 N. E. 17, headnote, ¶ 8.)

Other objections are made but they are not substantial, nor do they require special comment. The case will be remanded with directions to the district court to strike out the allowance for interest, and when so modified the judgment will be affirmed.